1

2

3

4          ***E-FILED - 5/4/11***

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   RICHARD B. HALL,                    No. C 09-5935 RMW (PR)

12          Plaintiff,                   **ORDER DENYING PLAINTIFF'S
                                         REQUEST FOR EXTENSION OF TIME;**
13   v.                                  **GRANTING IN PART AND DENYING IN
                                         PART DEFENDANTS' MOTION FOR**
14   ANTHONY HEDGPETH, et al.,           **SUMMARY JUDGMENT; REFERRING
                                         TO PRO SE SETTLEMENT PROGRAM**
15          Defendants.
                                         (Docket Nos. 38 & 68)
16   _____/

17

18                          **INTRODUCTION**

19          On December 17, 2009, plaintiff, a California prisoner incarcerated at Salinas Valley State

20   Prison ("SVSP") and proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983.

21   Thereafter, the court found the allegations in plaintiff's complaint, when liberally construed, stated

22   cognizable claims that prison officials at SVSP violated his First Amendment right to exercise his

23   religion freely, his Fourteenth Amendment right to equal protection by favoring the religion of

24   others over his own, and his rights under the Religious Land Use and Institutionalized Persons Act

25   ("RLUIPA").  (Order filed February 9, 2010, at 2.)

26          On July 23, 2010, defendants filed a motion for summary judgment.  On September 16,

27   2010, the court granted plaintiff an extension of 45 days – or until November 1, 2010 – to file his

28   Order Denying Plaintiff's Request for Extension of Time; Granting in Part and Denying in Part Defendants' Motion for
     Summary Judgment; Referring to Pro Se Settlement Program
     P:\PRO-SE\SJ.Rmw\CR.09\Hall935mfsj.wpd

1   opposition.  Plaintiff has not filed an opposition.  Rather, two weeks before the deadline, plaintiff

2   filed a request for an extension of time to do so.  For the reasons discussed below, plaintiff's request

3   for an extension of time is DENIED, and the motion for summary judgment is GRANTED IN PART

4   and DENIED IN PART.

5                                              **BACKGROUND**

6          The following facts are derived from plaintiff's verified complaint ("Compl.") and the

7   exhibits appended thereto.

8          Plaintiff alleges he is a member of the Reformed Christian or Calvinist religion, a group that

9   holds tenets and beliefs distinct from those held by other major Protestant religions.  (Compl. at 6-8,

10  13, 23, 45-55.)  Plaintiff alleges that Reformed Christians at SVSP are not provided separate chapel

11  access apart from generic services designed to encompass all non-Catholic Christians.  (Id. at 23.)

12  Plaintiff also contends that his requests to hold separate services for Reformed Christians at the

13  prison were denied because defendant Chaplain J. Young  and defendant Community Resources

14  Manager J. Bonnifield wrongly concluded that the Protestant services already being provided were

15  adequate to serve all who practiced the basic tenets of Christianity.  (Id. at 7-8, 23.)

16         On January 19, 2009, plaintiff filed an inmate grievance requesting that Reformed Christians

17  be provided a separate place of worship on Sunday mornings.  (Id. at 23.)  On February 3, 2009

18  defendant Chaplain Young denied the request.  (Id.)  Plaintiff appealed the decision to the first level

19  of review, which was denied on February 25, 2009 by defendant Bonnifield.  (Id. at 23-24, 34.)  A

20  second level appeal mis-labeled the request as one for "Native American Religious Services" and

21  was denied on April 7, 2009 by defendant Trexler.  (Id. at 24, 36-37.)  A final Director's Level

22  appeal was denied on July 13, 2009 by defendant Grannis.  (Id. at 39-40.)

23         On March 5, 2009, plaintiff filed an inmate grievance requesting a weekly time slot in the

24  chapel for Reformed Christians to study scriptures.  (Id. at 12, 57.)  On April 6, 2009 defendant

25  Chaplain Young denied the request.  (Id.)  Plaintiff appealed the decision to the first level of review,

26  which was denied by defendant Nickerson and screened out as a duplicate of plaintiff's request for

27  Sunday worship.  (Id. at 57, 62-63.)

28

United States District Court
For the Northern District of California

1   On March 22, 2009, plaintiff filed an inmate grievance requesting equal access to religious

2   materials such as audio books and CD's.  (Id. at 16, 66.)  On April 6, 2009, defendant Chaplain

3   Young purported to grant the request stating "[Y]ou are allowed to purchase books from any

4   legitimate book distributor."  (Id. at 66.)   On April 13, 2009 defendant appealed the decision stating,

5   "Yes, I know inmates can purchase books.  My specific issue is: Can I go ahead and order teaching

6   CD's and audio books from Ligonier Ministries and receive them outside my quarterly package?"

7   (Id.)  The  May 13, 2009 response "partially granted" the appeal, stating:

8          You cannot purchase religious audio books from Mount Zion Chapel Library and
       Ligonier Ministries because they are not an approved religious vendor.  I have
9      provided you with a list of approved religious vendors, in which you can purchase
       audio books. . . .  This will be considered a special purchase not a quarterly package.
10

11  (Id. at 69.)  Plaintiff appealed the decision to the second level of review, and defendant Nickerson

12  screened out the appeal on June 22, 2009, stating that plaintiff was "attempting to change original

    appeal issue."  (Id. at 76.)
13
          In his request for relief, plaintiff seeks to compel prison officials to: 1) allow use of outside
14
    space on Sundays for Reformed Christians to hold worship services apart from the generic
15
    Protestant services being provided at the prison; 2) grant chapel time for scripture study equal to that
16
    given to other religious groups at the prison on a day of the week apart from Sunday; 3) permit him
17
    to purchase and use CD's and audio books from Reformed Christian vendors, not to be counted
18
    against plaintiff's quarterly package; and 4) provide space to keep these purchased religious
19
    materials as well as other donated materials.  (Id. at 11, 15, 19-20.)
20

21                                    **DISCUSSION**

22  I.    **PLAINTIFF'S REQUEST FOR EXTENSION OF TIME TO FILE OPPOSITION**

23        As noted, plaintiff has moved for an extension of time to file an opposition to defendants'

24  motion for summary judgment.  This order finds plaintiff is not entitled to such extension, for the

25  following reasons.

26        Defendants filed their motion for summary judgment on July 23, 2010.  (Dkt. #38.)  The

27  court's February 9, 2010 Order of Service gave plaintiff thirty (30) days or until August 23, 2010 to

28  Order Denying Plaintiff's Request for Extension of Time; Granting in Part and Denying in Part Defendants' Motion for
    Summary Judgment; Referring to Pro Se Settlement Program
    P:\PRO-SE\SJ.Rmw\CR.09\Hall935mfsj.wpd          3

United States District Court
For the Northern District of California

1  file an opposition. (Dkt. #5.)  On August 6, 2010, plaintiff filed a request for an extension of time

2  to oppose the summary judgment motion. (Dkt. #57.)  Therein, he stated that he was still awaiting

3  discovery responses and that he had additional discovery requests he wished to serve.  On

4  September 16, 2010, the court granted plaintiff an extension of 45 days or until November 1, 2010 to

5  file his opposition. (Dkt. #65.)

6       It appears that plaintiff had begun issuing discovery requests no later than July 7, 2010 when

7  the clerk returned to plaintiff a request for production of documents and set of interrogatories in

8  accordance with Civil Local Rule 26, which requires the party propounding discovery to retain all

9  originals.  Another set of interrogatories was returned to plaintiff on July 28, 2010. (Dkt. #46.)

10  Plaintiff nonetheless continued to send copies of interrogatories to the court on August 6, 2010 and

11  October 18, 2010. (Dkt. ##61, 77-78.)

12       On October 18, 2010, plaintiff filed a second request to extend time to file his opposition

13  stating he had not yet received answers to all interrogatories. (Dkt. #68.)  Simultaneously, he filed a

14  request to compel discovery and including his oppositions to defendants Young, Bonnifield,

15  Nickerson, and Trexler's responses and objections to his interrogatories. (Dkt. ## 70, 72-73.)

16       On October 26, 2010, plaintiff withdrew his request to compel. (Dkt. #80.)  Therein,

17  plaintiff stated that the parties had decided to meet and confer regarding the discovery disputes and

18  that they had agreed to a November 18, 2010 response deadline for certain discovery. (Id.)  The

19  court has heard nothing further from any party in the subsequent three months.

20       Defendants' summary judgment motion has been pending for over six months.  The court

21  determines that plaintiff has had ample time to complete discovery and file his opposition.  Plaintiff

22  having had both notice and time to file an opposition and having failed to do so, his motion for an

23  extension of time is DENIED.  Accordingly, the motion for summary judgment is submitted.

24       The court notes, however, that plaintiff filed two declarations and a request for judicial

25  notice on August 6, 2010 at the time he made his second request for an extension. (Dkt. ## 58-60.)

26  In these documents and the attached exhibits, plaintiff disputes a number of the facts defendants

27  alleged in their motion.  Plaintiff's request for judicial notice (Dkt. #59), is DENIED as the

28

United States District Court
For the Northern District of California

1   information contained in the request is not of the sort that can be judicially noticed under Federal

2   Rule of Evidence 201(b).  The court will, however, treat plaintiff's August 6, 2010 filings along with

3   his verified complaint as his opposing affidavit.  See Schroeder v. McDonald, 55 F.3d 454, 460 &

4   nn. 10-11 (9th Cir. 1995) (holding verified complaint may be used as opposing affidavit under Rule

5   56 if based on personal knowledge and setting forth specific facts admissible in evidence).

6   **II.     MOTION FOR SUMMARY JUDGMENT**

7           A.      Standard of Review

8           Summary judgment is proper where the pleadings, discovery and affidavits show that there is

9   "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

10  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  A dispute

11  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict

12  for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

13          The party moving for summary judgment bears the initial burden of identifying those

14  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue

15  of material fact.  When the moving party has met this burden of production, the nonmoving party

16  must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts

17  showing that there is a genuine issue for trial.  If the nonmoving party fails to produce enough

18  evidence to show a genuine issue of material fact, the moving party wins.  Celotex Corp. v. Cattrett,

19  477 U.S. 317, 323 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th

20  Cir. 2000).

21          A district court may not grant a motion for summary judgment solely because the opposing

22  party has failed to file an opposition.  Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th Cir.

23  1994) (holding unopposed motion may be granted only after court determines that there are no

24  material issues of fact).  The court may, however, grant an unopposed motion for summary judgment

25  if the movant's papers are themselves sufficient to support the motion and do not on their face reveal

26  a genuine issue of material fact.  See United States v. Real Property at Incline Village, 47 F.3d 1511,

27  1520 (9th Cir. 1995) (holding local rule cannot mandate automatic entry of judgment for moving

28

1   party without consideration of whether motion and supporting papers satisfy Rule 56), <u>rev'd on</u>

2   <u>other grounds sub nom.</u> <u>Degen v. United States</u>, 517 U.S. 820 (1996).  As noted above, where the

3   plaintiff has not filed an opposition to the motion for summary judgment, the verified complaint may

4   be relied upon by the court as an opposing affidavit.  <u>See Schroeder v. McDonald</u>, 55 F.3d 454, 460

5   & nn. 10-11 (9th Cir. 1995).

6           B.      <u>First Amendment Right to Free Exercise of Religion</u>

7           "Inmates retain the protections afforded by the First Amendment, 'including its directive that

8   no law shall prohibit the free exercise of religion.'"  <u>Shakur v. Schriro</u>, 514 F.3d 878, 883-84 (9th

9   Cir. 2008) (quoting <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987)).  In order to establish a

10   free exercise violation, a prisoner must show a defendant burdened the practice of his religion, by

11   preventing him from engaging in activities he sincerely believes are mandated by his faith, without

12   any justification reasonably related to legitimate penological interests.  <u>See Shakur</u>, 514 F.3d at 884-

13   85.  In <u>Shakur</u>, the Ninth Circuit established that, as a threshold matter, a prisoner is not required to

14   show objectively that a central tenet of his faith is burdened by a prison regulation to raise a viable

15   claim under the Free Exercise Clause.  Rather, the test whether the prisoner's belief is "sincerely

16   held" and "rooted in religious belief" determines if the Free Exercise Clause applies.  <u>Id.</u> (finding

17   district court impermissibly focused on whether consuming Halal meat is required of Muslims as a

18   central tenet of Islam, rather than whether the plaintiff sincerely believed eating kosher meat is

19   consistent with his faith).  The mandates of a religion are not merely what is minimally required of

20   adherents of a religion but include what "the individual human being perceives to be the requirement

21   of the transhuman Spirit to whom he or she gives allegiance." <u>Peterson v. Minidoka County School</u>

22   <u>Dist.</u>, 118 F.3d 1351, 1357 (9th Cir. 1997).

23           A restriction on an inmate's First Amendment religious rights is valid if it is "'reasonably

24   related to legitimate penological interests.'"  <u>See O'Lone</u>, 482 U.S. at 349 (quoting <u>Turner v. Safley</u>,

25   482 U.S. 78, 89 (1987)).  The burden is on the prison officials to prove that the restriction of the

26   prisoner's exercise of religion was reasonably related to a legitimate penological objective.  <u>See</u>

27   <u>Ashelman v. Wawrzaszek</u>, 111 F.3d 674, 677-78 (9th Cir. 1997).  A prisoner's right to free exercise

28

**United States District Court**
For the Northern District of California

1  of his religion "'may be curtailed in order to achieve legitimate correctional goals or to maintain

2  prison security.'"  <u>See</u> <u>Ward v. Walsh</u>, 1 F.3d 873, 876 (9th Cir. 1993) (quoting <u>O'Lone</u>, 482 U.S. at

3  348).

4          Under the <u>Turner</u> analysis, a court must consider four factors when determining if a

5  restriction that infringes on a prisoner's rights is reasonably related to legitimate penological

6  interests: (1) whether the restriction has a logical connection to legitimate governmental interests;

7  (2) "whether there are alternative means of exercising the right that remain open to prison inmates";

8  (3) "the impact accommodation of the asserted constitutional right will have on guards and other

9  inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready

10  alternatives," or, in other words, whether the rule at issue is an "'exaggerated response' to prison

11  concerns."  <u>Turner</u>, 482 U.S. at 89-90 (internal quotation marks and citations omitted).

12          C.    <u>Religious Land Use and Institutionalized Persons Act</u>

13          The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides,

15          No government shall impose a substantial burden on the religious exercise of a
           person residing in or confined to an institution, as defined in section 1997 [which
16          includes state persons], even if the burden results from a rule of general applicability,
           unless the government demonstrates that imposition of the burden on that person (1)
17          is in furtherance of a compelling governmental interest; and (2) is the least restrictive
           means of furthering that compelling governmental interest.

18  42 U.S.C. § 2000cc-1(a).  The statute applies to any "program or activity that receives Federal

19  financial assistance."  42 U.S.C. § 2000cc1(b)(1).

20          Congress intended to distinguish RLUIPA from traditional First Amendment jurisprudence

21  in at least two ways.  First, it expanded the reach of the protection to include "'any religious

22  exercise,' including 'any exercise of religion, whether or not compelled by or central to, a system of

23  religious belief.'"  <u>Greene v. Solano County Jail</u>, 513 F.3d 982, 986 (9th Cir. 2008) (quoting <u>Cutter</u>

24  <u>v. Wilkinson</u> 544 U.S. 709, 715 (2005) and 42 U.S.C. § 2000cc-5(7)(A)).  RLUIPA "bars any

25  inquiry into whether a particular belief or practice is 'central' to a prisoner's religion."  <u>Greene</u>, at

26  986.  Second, as opposed to the deferential rational basis standard of <u>Turner v. Safely</u>, 482 U.S. 78,

27  89-90 (1987), RLUIPA requires the government to meet the much stricter burden of showing that

28  Order Denying Plaintiff's Request for Extension of Time; Granting in Part and Denying in Part Defendants' Motion for
   Summary Judgment; Referring to Pro Se Settlement Program
   P:\PRO-SE\SJ.Rmw\CR.09\Hall935mfsj.wpd        7

the burden it imposes on religious exercise is "'in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.'"  Greene, at 986 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).

D.     Fourteenth Amendment Equal Protection

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," Cruz v. Beto, 405 U.S. 319, 322 (1972), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Allen v. Toombs, 827 F.2d 563, 568-69 (9th Cir. 1987).  The court must consider whether "the difference between the defendants' treatment of [the inmate] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'"  Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008) (citation omitted) (finding district court erroneously applied rational basis review to plaintiff's claim that defendants violated equal protection clause by providing only Jewish inmates with kosher meat diet and remanding claim so record could be more fully developed on defendants' asserted penological interests).

E.     Analysis

1.     Separate Sunday Worship Services

Defendants argue that they are entitled to summary judgment on plaintiff's claim for separate Sunday worship because the Reformed Christian denomination is part of the Protestant religion. (Dkt. #38 at 4.)  Accordingly, defendants claim, the non-denominational Protestant service that SVSP already offers accommodates plaintiff, and his attendance would fulfill his Sunday worship requirement.  (Id. at 4-5.)  Defendants rely on the declarations of defendant Young, SVSP's Protestant Chaplain, and Mule Creek State Prison Chaplain Scott Barham to support these propositions.  (Dkt. ## 40, 41.)

United States District Court
For the Northern District of California

1   Plaintiff has testified by way of his verified complaint and declarations, however, that the

2   Protestant services offered at SVSP are incompatible with Reformed Christian religious beliefs.

3   (Compl. at 6-8, 13, 23, 45-55; Dkt. #58 at 6.)  Plaintiff has also submitted a letter from his pastor,

4   Steven Franks, explaining the distinction between Reformed Theology and other Protestant

5   doctrines.  (Dkt. #57 at 34-57.)  Mr. Franks states that "those who fully understand the differences

6   are not able to worship 'in spirit and truth' in churches who are not like-minded."  (Id. at 34.)

7   Plaintiff also submits evidence that Calipatria State Prison, his prior institution, held separate

8   services for Reformed Christians (Compl. at 8-9, 43-44), supporting his assertion that there are

9   recognized differences amongst the religious sects.  Finally, plaintiff notes that he has been banned

10  from chapel, allegedly in retaliation for his various inmate appeals and for this lawsuit.  (Dkt. #58 at

11  2; Dkt. #57 at 12-30.)  The CDCR has acknowledged that "plaintiff has confidential enemies" and

12  temporarily placed plaintiff in Administrative Segregation in 2010 for "self-expressed safety

13  concerns."  (Dkt. #75 at 15.)

14  Separately, defendants state that plaintiff is housed at SVSP's Facility A, which is reserved

15  for inmates requiring the highest level of security.  (Dkt. #38 at 7.)  According to defendants, these

16  inmates are not allowed to gather unsupervised for any reason and, because correctional staff is

17  limited, the inmates' activities must be limited.  (Id.)  Defendants fail, however, to provide any

18  evidentiary support for the assertion that correctional staff in Facility A is limited, let alone too

19  limited to allow plaintiff separate worship once weekly in an outside space.  Plaintiff states that

20  SVSP's Reformed Christians "offered to meet on the yard under the supervision of yard officers -

21  and the officer in tower - . . . [or] whatever is the least amount of strain on [the] existing program."

22  (Compl. at 26.)  Defendants offer no evidence to show that this cannot be accommodated.

23  Furthermore, that inmates may be segregated from other prisoners either for their own protection or

24  for disciplinary reasons does not deprive them of their right to free exercise, e.g. to attend religious

25  services.  See Beck v. Lynaugh, 842 F.2d 759, 761 (5th Cir. 1988); Mawhinney v. Henderson, 542

26  F.2d 1, 3 (2d Cir. 1976); see also Whitney v. Brown, 882 F.2d 1068, 1074-78 (6th Cir. 1989) (where

27

28  Order Denying Plaintiff's Request for Extension of Time; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; Referring to Pro Se Settlement Program
P:\PRO-SE\SJ.Rmw\CR.09\Hall935mfsj.wpd          9

1   security concerns regarding movement of inmates are manageable, prison administrators may be

2   required to allow inmates from all areas of institution to gather together for services).

3          In sum, plaintiff has produced sufficient evidence to raise triable issues regarding his

4   sincerely held beliefs, the burden on his exercise of his religion resulting from SVSP's denial of

5   separate worship time, and his assertion that he is similarly situated to non-Reformed Christian

6   inmates but treated differently because of his sect.  Accordingly, the court DENIES defendants'

7   motion for summary judgment on plaintiff's separate worship claim.

8                          2.      Separate Weekly Scripture Study

9          Defendants argue that they are entitled to summary judgment on plaintiff's claim for separate

10  weekly scripture study because plaintiff may already participate in SVSP's existing weekly religious

11  group study.  (Dkt. #38 at 5.)  Specifically, defendant Young states in his declaration that he "leads a

12  weekly Bible study program that is available to all inmates."  (Dkt. #41, ¶ 6.)  Defendant Young

13  states that "[d]uring these session, inmates are allowed to break-off into smaller groups to discuss a

14  variety of religious topics.  Inmates identifying themselves as Reformed Christian, Methodist,

15  Pentecostal, Lutheran, Presbyterian, or Baptist, may separate from the larger group and discuss

16  issues particular to their own denomination or beliefs."  (Id.)  Accordingly, defendants conclude,

17  plaintiff already has group study particular to his faith.  (Dkt. #38 at 5.)

18         Plaintiff has submitted sufficient evidence to dispute these statements.  First, plaintiff

19  submits in his declaration that defendant Young does not in fact teach the weekly Bible study at

20  SVSP.  (Dkt. #58 at 3.)  Rather, according to plaintiff, defendant Young sits in his office during

21  these weekly studies while inmate "elders" teach "Dispensationalism," which plaintiff considers

22  "false teachings."  (Id.)  Plaintiff also submits a declaration from fellow Christian SVSP inmate

23  Scott L. Martin.  (Dkt. #57 at 5-9.)  Inmate Martin states that he has been incarcerated at SVSP since

24  2006, and in that time he has never seen defendant Young lead a Bible study.  (Id. at 7.)  Mr. Martin

25  also testifies that he has never seen defendant Young separate the inmates into their denominational

26  groups.  (Id.)  Finally, as noted above, plaintiff states that he has been banned from chapel.

27  Accordingly, even assuming defendant Young conducts weekly group study that allows for separate

28  Order Denying Plaintiff's Request for Extension of Time; Granting in Part and Denying in Part Defendants' Motion for
    Summary Judgment; Referring to Pro Se Settlement Program
    P:\PRO-SE\SJ.Rmw\CR.09\Hall935mfsj.wpd            10

United States District Court
For the Northern District of California

1   denominations to "break off," plaintiff has no access to such study.  Defendants' unsupported claim

2   that SVSP lacks the correctional staff to accommodate plaintiff's request also fails for the reasons

3   discussed above.

4          In sum, plaintiff has produced sufficient evidence regarding his sincerely held beliefs, the

5   burden on his exercise of his religion resulting from SVSP's denial of separate group scripture

6   study, and his assertion that he is similarly situated to non-Reformed Christian inmates but treated

7   differently because of his sect.  Accordingly, the court DENIES defendants' motion for summary

8   judgment on plaintiff's separate religious study claim.

9                          3.   Purchase of Religious Materials

10         Defendants argue that they are entitled to summary judgment on plaintiff's claim for

11  purchase of religious materials because SVSP's Operations Manual allows inmates to order their

12  own religious materials from a list of approved vendors.  (Dkt. #38 at 3, 5; Dkt. #39, Ex. A.)

13  Inmates wishing to order from an unapproved vendor must make a written request that the vendor be

14  added to the list.  (Id.)

15         Defendants' evidence does not show the absence of a factual dispute.  Specifically,

16  defendants never assert that plaintiff failed to follow these procedures.  Indeed, plaintiff's verified

17  complaint shows that he did make a written request to purchase materials from Ligonier Ministries

18  and that the request was denied without explanation and eventually screened out.  (Compl. at 66-76.)

19  In addition, both plaintiff and inmate Martin submit declarations stating that only Christians have

20  religious special purchases tallied against their quarterly package, while other religious groups do

21  not.  (Dkt. #59 at 2; Dkt. #60 at 2.)  Plaintiff also states in his verified complaint that other religious

22  groups at SVSP, including Protestants, Muslims, Jews, Catholics, Buddhists, Native Americans,

23  Odinists, Rastafarians, and Wiccans, all have their own approved vendors, while Reformed

24  Christians do not.  (Compl. at 16.)

25         In sum, plaintiff has produced sufficient evidence regarding his sincerely held beliefs, the

26  burden on his exercise of his religion resulting from SVSP's denial of his request to purchase

27  religious materials, and his assertion that he is similarly situated to other inmates but treated

28  Order Denying Plaintiff's Request for Extension of Time; Granting in Part and Denying in Part Defendants' Motion for
    Summary Judgment; Referring to Pro Se Settlement Program
    P:\PRO-SE\SJ.Rmw\CR.09\Hall935mfsj.wpd          11

1   differently because of his religion.  Accordingly, the court DENIES defendants' motion for

2   summary judgment on plaintiff's religious purchase claim.

3                   4.   <u>Storage of Religious Materials</u>

4         Defendants argue that they are entitled to summary judgment on plaintiff's claim for storage

5   space for religious materials because religious material may already be stored in the SVSP chapel

6   area.  (Dkt. #38 at 5-6.)  According to defendants, any religious group is free to leave its religious

7   materials in the chapel with pre-approval by the chaplain, and plaintiff is afforded the same

8   opportunity.  (<u>Id.</u>)

9         As noted above, plaintiff states that he has been banned from chapel.  (Dkt. #58 at 1-2.)

10  Accordingly, even assuming defendant chaplain Young allows chapel storage space for Reformed

11  Christian materials, plaintiff has no access to this resource.  Plaintiff also states that the chapel

12  library is not secure and not maintained.  (Dkt. #59 at 4.)  According to plaintiff, "[a]lmost all

13  donated items are stolen out of [the] chapel library."  (<u>Id.</u>)  Plaintiff states that there is no "Reformed

14  Christian section such as there is for other religions in the chapel library."  (Dkt. #60 at 2.)  Inmate

15  Martin confirms in his declaration that Reformed Christians "have no access to the chapel" and

16  "have no religious section in the chapel to keep materials."  (Dkt. #57 at 7.)  Finally, plaintiff states

17  in his declaration that, subsequent to filing this action, other inmates have stolen items from his cell,

18  including music CD's and a CD player (Dkt. #58 at 4), supporting his claim that he currently has no

19  secure space for his materials.

20        In sum, plaintiff has produced sufficient evidence regarding his sincerely held beliefs, the

21  burden on his exercise of his religion resulting from SVSP's denial of storage space to plaintiff, and

22  his assertion that he is similarly situated to other inmates but treated differently because of his

23  religion.  Accordingly, the court DENIES defendants' motion for summary judgment on plaintiff's

24  claim for storage of religious materials.

25       F.   <u>Qualified Immunity</u>

26        Defendants move for summary judgment on all claims on the ground that, as government

27  officials, they are entitled to qualified immunity.  The court disagrees.

28  Order Denying Plaintiff's Request for Extension of Time; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; Referring to Pro Se Settlement Program
P:\PRO-SE\SJ.Rmw\CR.09\Hall935mfsj.wpd     12

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Qualified immunity protects government officials from civil liability for actions taken within

2   their official discretion insofar as those actions do not violate clearly established statutory or

3   constitutional rights of which a reasonable official would have been aware.  See Harlow v.

4   Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is not merely a defense to liability; rather,

5   when applicable, qualified immunity protects government officials from lawsuits and, hence, from

6   the burdens of litigation.  See Saucier v. Katz, 533 U.S. 194, 200-01 (2001).

7    A court considering a claim of qualified immunity must determine whether the plaintiff has

8   alleged the deprivation of an actual constitutional right and whether such right was clearly

9   established such that it would be clear to a reasonable actor that his conduct was unlawful in the

10   situation that confronted him.  Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) (overruling the

11   sequence of the two-part test that required determination of a deprivation first and then whether such

12   right was clearly established, as required by Saucier). The court may exercise its discretion in

13   deciding which prong to address first, in light of the particular circumstances of each case.  Id.

14    Although the facts at trial might show otherwise, at this stage, the unresolved factual

15   allegations as viewed in the light most favorable to plaintiff show a violation of his religious  rights

16   as a result of defendants' conduct, which prohibited plaintiff from engaging in religious activity and

17   from possessing religious items for no legitimate and/or permissible reason.  Taking the allegations

18   as true, as this court must, plaintiff has demonstrated a violation of his rights under RLUIPA and the

19   First and Fourteenth Amendments.  Qualified immunity is not appropriate at this stage because it

20   was clearly established at the time of the alleged violations that prison officials may not

21   substantially burden inmates' right to the free exercise of religion without some legitimate

22   penological justification and because the court cannot say as a matter of law that it was objectively

23   reasonable for defendants to believe that the facts as they stand on summary judgment showed no

24   violation of a clearly established right.  Accordingly, this issue remains to be resolved in further

25   proceedings, and summary judgment on defendants' request for qualified immunity is DENIED.

26   ///

27   ///

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

G.      Individual Defendants Hedgpeth, Grannis, Trexler, and Nickerson

Defendants claim that individual defendants Hedgpeth, Grannis, Trexler, and Nickerson are entitled to summary judgment because plaintiff has failed to establish a causal connection between them and the alleged violation of plaintiff's rights.  The court agrees.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of state law committed a violation of a right secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42, 48 (1988).  Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.  Leer, 844 F.2d at 633.  Sweeping conclusory allegations will not suffice; the plaintiff must instead "set forth specific facts as to each individual defendant's" deprivation of protected rights.  Leer, 844 F.2d at 634.

The court agrees that the complaint does not allege any wrongdoing as to defendants Hedgpeth, Grannis, Trexler, and Nickerson.  It appears that defendants Grannis, Trexler, and Nickerson were named because they reviewed and denied plaintiff's inmate appeals.  There is no constitutional right, however, to a prison administrative appeal or grievance system.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  An incorrect decision on an administrative appeal or a failure to handle it in a particular way therefore does not amount to a violation of plaintiff's constitutional rights.

Separately, it appears that defendant Hedgpeth was named because he is acting warden of SVSP.  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff has failed to allege that defendant Hedgpeth did anything, or omitted to do anything, which violated plaintiff's constitutional rights.

1   Accordingly, summary judgment is GRANTED as to defendants Hedgpeth, Grannis, Trexler,

2   and Nickerson, and the court dismisses them from the action.

3   **H.   Referral to Pro Se Prisoner Settlement Program**

4   Prior to setting this matter for trial, the court finds good cause to refer this matter to Judge

5   Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims

6   set forth above.  The proceedings will consist of one or more conferences as determined by Judge

7   Vadas.  The conferences shall be conducted with defendants, or the representative for defendants,

8   attending by videoconferencing if they so choose.  If these settlement proceedings do not resolve

9   this matter, the court will then set this matter for trial and consider a renewed motion from plaintiff

10  for appointment of counsel.

11                                   **CONCLUSION**

12  In light of the foregoing, the court orders as follows:

13  1.      Plaintiff's request for an extension of time to file an opposition to defendants' motion

14  for summary judgment is DENIED.

15  2.      Defendants' motion for summary judgment is GRANTED in part and DENIED in

16  part.  Defendants Hedgpeth, Grannis, Trexler, and Nickerson are DISMISSED from this action with

17  prejudice.  Defendants' request for judicial notice is GRANTED.  Plaintiff's request for judicial

18  notice is DENIED.

19  3.      The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner

20  Settlement Program for settlement proceedings on the remaining claims in this action, as described

21  above.  The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of

22  this order, or as soon as practicable.  Judge Vadas shall coordinate a time and date for a settlement

23  conference with all interested parties or their representatives and, within **ten (10) days** after the

24  conclusion of the settlement proceedings, file with the court a report regarding the prisoner

25  settlement proceedings.  If these settlement proceedings do not resolve this matter, plaintiff can file a

26  renewed motion for appointment of counsel and the court will then set this matter for trial.

27

28  Order Denying Plaintiff's Request for Extension of Time; Granting in Part and Denying in Part Defendants' Motion for
    Summary Judgment; Referring to Pro Se Settlement Program
    P:\PRO-SE\SJ.Rmw\CR.09\Hall935mfsj.wpd          15

**United States District Court**
For the Northern District of California

1    4.    The clerk of the court shall mail a copy of the court file, including a copy of this

2  order, to Judge Vadas in Eureka, California.

3    5.    The instant case is STAYED pending the settlement conference proceedings.

4

    This order terminates Docket Nos. 38 & 68.

5

6    IT IS SO ORDERED.

7  Dated: _____5/4/11_____



8                                              RONALD M. WHYTE
                                               United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Plaintiff's Request for Extension of Time; Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; Referring to Pro Se Settlement Program
P:\PRO-SE\SJ.Rmw\CR.09\Hall935mfsj.wpd          16